UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LARYSSA RICE, individually, and as
Personal Representative for the Estate
of Travis Rice, deceased,

        Plaintiff,

v.                                       Case No. 3:20-cv-1206-BJD-PDB

FLORIDA DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____

## ORDER

### I. Status

Plaintiff, Laryssa Rice, individually and as personal representative for the estate of Travis Rice, a former prisoner of the Florida Department of Corrections (FDOC), is proceeding on a complaint under state law (for wrongful death) and federal law (for the violation of constitutional rights) against the FDOC and seven corrections officers of different rank based on an incident that occurred at Hamilton Correctional Institution (HCI) (Doc. 6; Compl.). Plaintiff initiated this action in the Circuit Court for the Third Judicial Circuit. Six of the officers who are represented by the same counsel removed the case to this

Court. See Notice of Removal (Doc. 1); Amended Notice of Removal (Doc. 9). The seventh officer, Sergeant Derek Johnson, has not been served.

Before the Court are the following motions to dismiss: Sergeant Edwardo Miller's (Doc. 12; Miller Motion); Sergeant James Creamer's (Doc. 13; Creamer Motion); Sergeant Nicholas McCoy's (Doc. 14; McCoy Motion); Sergeant Jaimy Hancock's (Doc. 15; Hancock Motion); Sergeant James Hardee's (Doc. 16; Hardee Motion); and Captain Jason Yetton's (Doc. 17; Yetton Motion).[1] Because the officers raise the same defenses, and the facts against them "are inextricably intertwined," Plaintiff opposes the motions in a consolidated response (Doc. 19; Pl. Resp.).[2]

## II. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[1] The FDOC answered the complaint (Doc. 7).

[2] Plaintiff designates the response as one in opposition to only five motions: those filed by Defendants Miller, Creamer, McCoy, Hardee, and Yetton. See Pl. Resp. at 1, 2. It appears Plaintiff also intended to respond in opposition to Defendant Hancock's motion to dismiss because Plaintiff's counsel docketed the filing as a response to all six motions and, in the response, references Defendant Hancock and points to allegations directed to him. Id. at 2 n.1, 7 n.3, 7, 8.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Gill as Next Friend of K.C.R. v. Judd, 941 F.3d 504, 511 (11th Cir. 2019) (quoting Iqbal, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff. Iqbal, 556 U.S. at 678.

### III. Complaint Allegations

Accepting Plaintiff's allegations as true and construing them in the light most favorable to her, Travis Rice "was strangled to death by correctional officers during his incarceration [at HCI] on September 4, 2018." See Compl. ¶ 19. Plaintiff alleges the seven officer-defendants reported to Mr. Rice's

3

dormitory together, but the reason they did so is unknown. Id. ¶ 25. Some reports indicate Mr. Rice was asking his fellow inmates for help in a "non-violent and non-threatening" manner, but the officers reported to the Office of the Inspector General (IG) and in their use-of-force summaries that Mr. Rice was combative and possibly under the influence of synthetic cannabis. Id. ¶¶ 25, 37.

As Plaintiff describes it, Defendant Sergeant Johnson—who has yet to be served—primarily was responsible for Mr. Rice's death. Id. ¶¶ 22, 27-28. Sergeant Johnson "felt the need" to spray Mr. Rice with chemical agents and, after he did so, used his body weight to hold Mr. Rice face-first on the floor with "his left arm wrapped around [Mr. Rice's] throat, consistent with . . . a chokehold." Id. ¶¶ 27-28. Defendants Miller, Creamer, McCoy, and Hardee "collectively secured [Mr. Rice's] extremities to the floor and applied restraints," all while Sergeant Johnson maintained his hold around Mr. Rice's neck. Id. ¶ 29. Plaintiff alleges Mr. Rice "was continuously held in that position while [Defendant] Miller applied additional chemical agents." Id. ¶ 30.

Plaintiff alleges the "remaining Defendant Correctional Officers did nothing the stop the strangulation and continued to restrain [Mr. Rice] even as he was choking to death and, in fact, were complicit in and participated in Sergeant Johnson's excessive use of force." Id. ¶ 33. After Mr. Rice was fully

4

restrained, Defendants Hancock and Hardee tried lifting him off the floor, but Mr. Rice had "become physically and verbally unresponsive." Id. ¶ 34. Despite his unresponsive demeanor, Mr. Rice was carried to the exit of the dormitory and placed in a wheelchair. Id. ¶ 35. Mr. Rice was then taken to the infirmary where CPR efforts were commenced but failed. Id.

The medical examiner concluded Mr. Rice died of mechanical asphyxia and labeled the manner of death a homicide. Id. ¶ 37. Mr. Rice "did not have any illicit drugs in his system." Id. Plaintiff alleges all officers were trained in the dangers of a chokehold and knew that such a technique could result in death. Id. ¶ 31. Plaintiff sues all corrections officers for the use of excessive force or a failure to intervene under 42 U.S.C. § 1983 (count one) and for wrongful death under Florida law (count three). Count two is against the FDOC, who has answered the complaint (Doc. 7).

### IV. Motions & Analysis

In essentially identical motions, Defendants invoke qualified immunity as to count one and sovereign immunity as to count three. Defendants uniformly contend Plaintiff's allegations "portray a situation where a prison disturbance involving a potentially intoxicated inmate required force in order to restore the peace," and the officers acted "in haste, [and] under pressure" to respond. See, e.g., Miller Motion at 7-8. Thus, according to Defendants, they

used force not with malicious intent but rather in a "good-faith effort to maintain or restore discipline." Id. at 8 (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

## A. Qualified Immunity

An officer sued in his individual capacity "is entitled to qualified immunity for his discretionary actions unless he violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows officers to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id.

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he was acting in his discretionary authority at the relevant times. Dukes v. Deaton, 852 F.3d 1035, 1041-42 (11th Cir. 2017). Plaintiff concedes Defendants were acting within their discretionary duties at the relevant times. See Pl. Resp. at 5. Thus, the burden shifts to her to point to allegations that, accepted as true, show Defendants Miller, Creamer,

6

McCoy, Hancock, Hardee, and Yetton violated a clearly established constitutional right. Alcocer, 906 F.3d at 951.

Prison guards may use force against an inmate when necessary "to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320 (1986). See also Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991). However, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987). As such, "force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley, 475 U.S. at 320-21).

Courts analyzing whether a plaintiff sufficiently alleges an officer used force maliciously and sadistically to cause harm consider various factors, including the need for the use of force, the extent of force used in relation to the prisoner's conduct, the threat of harm the prisoner posed to staff and inmates, whether the officer tried to "temper the severity of a forceful response," and the injuries inflicted. Id. (citing Hudson, 503 U.S. at 8). In considering these factors, courts may draw inferences "as to whether the use of force could plausibly have been thought necessary, or instead evinced such

wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id. at 1300-01. When an officer uses excessive force against a prisoner, officers who are present and in a position to intervene can be held personally liable if they do not. Id. at 1301 (citing cases).

Plaintiff carries her burden on qualified immunity. Defendants may well ultimately demonstrate they reacted reasonably to subdue a physically combative, intoxicated inmate, but the Court is obliged to accept Plaintiff's well-pled allegations as true and draw all reasonable inferences in her favor. In doing so, Plaintiff portrays a much different picture than the one Defendants ask the Court to accept as true. Plaintiff describes conduct that, accepted as true, permits the reasonable inference seven officers either directly used deadly force against an inmate who was not posing a threat or failed to intervene to prevent harm they knew likely could cause death or serious harm.

Notably, Plaintiff alleges Defendants may not have had a reason to use force against Mr. Rice at all: she asserts it is unclear why Defendant officers went to Mr. Rice's dorm, and some inmates reported Mr. Rice was non-violent but merely asking for help. See Compl. ¶ 25. Thus, contrary to Defendants' characterization of events, the complaint does not demonstrate the officers had a need to use force or were reacting in "haste" to a disturbance caused by a physically combative inmate. See, e.g., Miller Motion at 3, 8, 14. If the officers

8

used force or permitted force to be used against Mr. Rice for no reason, their conduct could amount to an Eighth Amendment violation.

Even accepting as true, however, that the officers had a reason to use force—because Mr. Rice was combative and presumed intoxicated—Plaintiff alleges facts that permit the reasonable inference the measures taken "inflicted unnecessary and wanton pain and suffering caused by force used maliciously and sadistically for the very purpose of causing harm." See Williams, 943 F.2d at 1575 (quoting in part Whitley, 475 U.S at 320-21). Even though the officers whose motions are before the Court did not physically place Mr. Rice in a chokehold after having sprayed him with chemical agents, Plaintiff alleges they assisted Sergeant Johnson in doing so or watched him do so and, therefore, reasonably could be found to have participated in or enabled a use of force that was unreasonable under the circumstances.

"Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." Alcocer, 906 F.3d at 951 (quoting Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam)).

Plaintiff alleges Defendants Miller, Creamer, McCoy, and Hardee assisted in physically restraining Mr. Rice. See Compl. ¶¶ 27-29. Plaintiff explains these four officers "collectively secured [Mr. Rice's] extremities to the floor and applied restraints, including leg irons, while Sergeant Johnson's arm remained around [Mr. Rice's] throat in the face down position," knowing Mr. Rice had recently been sprayed with chemical agents and, therefore, likely was in "respiratory distress." Id. ¶¶ 29, 30. And knowing Mr. Rice was being held down with pressure on his neck, Defendant Miller administered a second round of chemical agents. Plaintiff does not allege Mr. Rice was resisting Sergeant Johnson's or the other officers' efforts to restrain him when Defendant Miller administered what was a second round of chemical agents. Id. ¶¶ 27-30. On the contrary, Plaintiff's allegations permit the inference Mr. Rice was unable to put up much of a fight given he may have been struggling to breathe and was pinned to the floor by four officers, with other officers present to assist. Id. Accepting Plaintiff's allegations as true, a reasonable person could conclude Defendants Miller, Creamer, McCoy, and Hardee participated in or failed to intervene during an unconstitutional use of force.

As to Defendants Hancock and Yetton, Plaintiff concedes they did not directly apply force to Mr. Rice, but were present during and "witnessed the takedown and strangulation . . . and had a clear and present opportunity to

intervene." See Pl. Resp. at 7 n.3. Plaintiff alleges Defendants Hancock and Yetton, along with the other five officers, "reported to [HCI's] F Dormitory, where [Mr. Rice] was located," and, therefore were present when the use-of-force incident occurred. See id. ¶¶ 25, 53. Whether Hancock or Yetton had the ability to intervene during the use of force is unclear, but Plaintiff alleges enough facts permitting the reasonable inference they watched other officers use excessive force and failed to take action to prevent harm to Mr. Rice knowing harm was likely to occur, which could constitute an Eighth Amendment violation. See, e.g., Velazquez v. City of Hialeah, 484 F.3d 1340, 1342 (11th Cir. 2007) ("[A]n officer who is present [during] a beating and fails to intervene may be held liable though he administered no blow.").[3]

Moreover, a reasonable inference to be drawn from Plaintiff's allegations is that all seven officers intended to harm Mr. Rice and later constructed a story to justify their actions, including that Mr. Rice was intoxicated and being combative. See Compl. ¶¶ 20, 23, 24, 33, 34-37. For instance, Plaintiff alleges the FDOC has refused to release a copy of the video footage and the IG's investigative report is "heavily redacted at key points." Id. ¶¶ 20, 25.

---

[3] Additionally, Plaintiff alleges Defendants Hancock and Hardee improperly moved a physically unresponsive Mr. Rice after he had been sprayed twice and nearly choked. See Compl. ¶¶ 34-35, 36. Such conduct could be found cruel and unusual.

11

Whether the officers had a reason to use force to subdue Mr. Rice and whether the extent of force they used or observed was reasonable under the circumstances is best addressed on a fully developed record at summary judgment. At this juncture, Plaintiff alleges enough facts against each officer suggesting he participated in a use of force that was imposed maliciously and sadistically to cause harm or failed to intervene when he observed the other officers' allegedly unconstitutional use of force. See Skrtich, 280 F.3d at 1300.

For these reasons, Plaintiff marshals enough facts to overcome a defense of qualified immunity. Id. at 1301 ("In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force maliciously and sadistically to cause harm is clearly established to be a violation of the Constitution." (internal quotation marks omitted)).

### B. Sovereign Immunity under Florida State Law

As to the wrongful death claim (count three), Defendants assert they are immune from suit and liability under Florida Statutes section 768.28(9)(a). See, e.g., Miller Motion at 12-14. Florida's sovereign immunity statute grants immunity to state employees for tort actions unless they "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." See Fla. Stat. § 768.28(9)(a).

Florida courts have equated the phrase "bad faith" as used in section 768.28(9)(a) with the actual malice standard and interpreted "malicious purpose" as conduct committed with "the subjective intent to do wrong." Peterson v. Pollack, 290 So. 3d 102, 109 (Fla. 4th DCA 2020) (citing cases). Conduct is considered "wanton" if performed "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons," while "willful" conduct is conduct performed "intentionally, knowingly and purposely." Id. at 110; Williams v. City of Minneola, 619 So. 2d 983, 987 (Fla. 5th DCA 1993) (holding a finding of recklessness also could support a finding of "willful and wanton conduct under section 768.28(9)"). See also Valdes v. Crosby, 390 F. Supp. 2d 1084, 1108 (M.D. Fla. 2005), aff'd, 450 F.3d 1231 (11th Cir. 2006) (noting the standard to overcome Florida's sovereign immunity "is at least as high as the standard needed to prove" an officer or agent of the state was deliberately indifferent to an inmate's health or safety under § 1983).

Plaintiff alleges facts that, accepted as true, permit the reasonable inference Defendants Miller, Creamer, McCoy, Hancock, Hardee, and Yetton "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." See Fla. Stat. § 768.28(9)(a). If true that these Defendants intentionally participated in or idly

13

observed a use of force knowing their actions or inactions could cause "a substantial likelihood of severe and irreparable bodily harm and/or death," see Compl. ¶ 30, a reasonable person could construe their conduct as malicious, reckless, or done with a willful and wanton disregard of human rights or safety. See, e.g., Medina v. Pollack, 300 So. 3d 173, 174, 176 (Fla. 4th DCA 2020) (holding the plaintiff avoided the sovereign immunity bar where the complaint alleged a school security officer saw a "kid" who was thought to be capable of "shoot[ing] up the school at some point" walking toward the school entrance with a gun bag but decided against immediately calling a Code Red).

For the reasons stated, Defendants are not shielded by Florida's sovereign immunity statute at this juncture.

Accordingly, it is now

**ORDERED:**

1. Defendants Miller's, Creamer's, McCoy's, Hancock's, Hardee's, and Yetton's motions to dismiss (Docs. 12-17) are **denied**.

2. Defendants Miller, Creamer, McCoy, Hancock, Hardee, and Yetton shall answer the complaint (Doc. 6) within **twenty days** of the date of this Order.

3. By **July 15, 2021**, Plaintiff shall **show cause** why the claims against Defendant Johnson should not be dismissed without prejudice for her

failure to timely serve him. See Fed. R. Civ. P. 4(m). Plaintiff's failure to show satisfactory cause by the designated deadline will result in the dismissal of the claims against Defendant Johnson without further notice.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of June 2021.

                                        BRIAN J. DAVIS
                                  United States District Judge

Jax-6
c:
Counsel of Record